(No. 27163.—      No. 27169.—

HENRY M. ASHTON *et al.,* Appellants, *vs.* THE COUNTY OF COOK *et al.*—(THE COUNTY OF COOK, Appellee.)— THE PEOPLE *ex rel.* Thomas J. Courtney, Appellee, *vs.* HENRY M. ASHTON *et al.,* Appellants.

*Opinion filed Sept. 21, 1943—Rehearing denied Nov. 11, 1943.*

S. J. KONENKAMP, and BUTZ, HUTCHINSON, NUTT & MURPHY, (DANIEL F. MURPHY, of counsel,) for appellants Henry M. Ashton and Ralph O. Butz; JACOB G., GROSSBERG, (FRANKLIN J. STRANSKY, and EDWIN HAMILTON, of counsel,) for appellant Edward M. Winston.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JOSEPH BURKE, and NEAL J. MCAULIFFE, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Pursuant to an order entered in vacation, causes No. 27163 and No. 27169 were consolidated for oral argument and opinion. The primary question in each case is as to the liability of the county of Cook to pay appellants Henry M. Ashton, Edward M. Winston and Ralph O. Butz, all of whom are lawyers, for legal services performed by them for the county pursuant to the terms of contracts of employment. The contracts provided that appellants were to institute legal proceedings and take such steps as were necessary to collect forfeited real estate taxes and penalties. On behalf of the People, represented by the State's Attorney of Cook county, it was contended that the board of commissioners of the county acted without authority of law, that their acts were *ultra vires* and the contracts

void. It is claimed that the action of the board in employing private attorneys to perform such service was in effect taking a power and duty given by the constitution and statute to the State's Attorney and conferring it on another. These contentions involve interpretation of certain provisions of our State constitution and this gives the court jurisdiction to review the cases on direct appeal.

On May 22, 1931, the board of commissioners of Cook county adopted a resolution purporting to employ Henry M. Ashton as an attorney, which resolution, with appellants' written acceptances and certain supplementary resolutions, constitutes the contracts involved in these cases. In the preamble to the resolution it was recited that there was more than $16,500,000 due in taxes on real estate in Cook county that had been forfeited to the State for nonpayment; that by statute it was the nominal duty of the State's Attorney of the county to prosecute actions for the collection of delinquent taxes, if and when the county board provided by budget for the same, but that in recent months the number of forfeitures had increased to such an extent that the appropriation for the current year to the State's Attorney was inadequate to enable him to perform the work involved in bringing such a large number of cases. It was stated that a large number of persons who had permitted their real estate to be forfeited for nonpayment of taxes were financially responsible; that a large amount was due as penalties, that in some instances the accumulated penalties exceeded the amount of taxes due, and that all penalties when collected were the property of the county. It was stated that the regular duties of the legal adviser of the county board were such that he did not have time to enforce the collection of forfeited real estate taxes, that during the last five years the State's Attorney had collected in forfeited taxes and penalties about $200,000 per year. In consideration of such premises, it was resolved: "That Henry M. Ashton,

attorney at law be and he is hereby retained and employed to begin and prosecute foreclosure suits and such other suits or proceedings as may be deemed desirable in order to collect the revenue now due to the State of Illinois and other taxing bodies from real estate in Cook county that is now forfeited to the state:

"That said Henry M. Ashton is hereby authorized and empowered to appear for and in behalf of and to represent the People of the State of Illinois and the County of Cook in all such suits as their attorney and solicitor; * * *

"As the amount provided for in the 1931 budget to take care of this work of securing additional revenue from forfeited property in Cook county is not sufficient to insure a continuation of said work, the contract between this Board and the said attorney shall be considered a contingent one from the beginning of said attorney's employment. The sums to be paid by Cook county, as above set forth and as appropriated, shall be considered as an advance to said attorney for fees and expenses in order that said work may be properly started;

"However, all sums paid to said attorney, as well as all sums paid to his assistant, for clerk hire, stenographic, and other expenses, shall be first deducted before any further money shall be paid to said attorney; * * *."

Provision was made in the contract to pay Ashton $600 per month and an additional amount of $700 per month budgeted as follows: an assistant not to exceed $300, a clerk $250 and a stenographer $150. It also provided that Ashton should be paid a contingent fee, the same to be computed upon the taxes and penalties collected, but that such fee should not be paid except from the penalties so collected. Various contingencies were set forth upon which the contingent fee was payable, the lowest percentage being fifteen percent (15%) of the tax and penalty where there was one penalty, and scaling upwards of twenty percent (20%) where there were two

penalties, and twenty-five percent (25%) where there were more than two, with the further provision that if in any six months' period voluntary settlement was made with the county treasurer through the State's Attorney's office, where the sum received exceeded $150,000, then Ashton was to receive as further fee a sum equal to five percent (5%) of such excess, with the provision that in computing the amount due under the five percent (5%) clause the sums collected either by the State's Attorney or Ashton by suit or foreclosure should not be included. Claims for the regular monthly charges were to be paid on Ashton's verified statement and settlements were to be made as specified. It provided that the board of commissioners reserved the right to determine the basis of settlement with the property owner and the amount of penalty to be paid in cases where there was an adjustment for less than the total allowed by statute. It was stated that the contract should be effective as of May 15, 1931, and should terminate on November 30, 1932, unless renewed by the county board and said attorneys.

On May 25, 1931, Henry M. Ashton addressed a communication to the board, which referred to the resolution of May 22 and stated that he accepted the employment on the terms outlined and would proceed with the work at once. The then State's Attorney approved the resolution as to form.

On April 16, 1932, Ashton addressed another communication to the board suggesting that Edward M. Winston, who is one of the appellants herein, be authorized to carry out Ashton's contract from that date until December 1, 1932. The request was approved April 27, 1932, and Edward M. Winston was given full power and authority to represent the board "in all suits heretofore brought under said contract and to carry such suits to completion; and authority is also given hereby to the said Edward M. Winston to begin and prosecute with full power as attor-

ney for this Board all other suits and proceedings which he may deem necessary and desirable to collect delinquent taxes due and unpaid on real estate in Cook county under the terms and conditions as to compensation which were provided in the contract with Henry M. Ashton."

On November 22, 1932, the board adopted a further resolution which recited "That the authority heretofore granted by resolution of this Board to Edward M. Winston to represent said Board is hereby extended to March 15th, 1933, with full power to begin any suits for collecting of delinquent taxes which he may deem desirable during the said period and to prosecute them to completion, and that the terms and conditions set forth in the original contract with Henry M. Ashton, dated May 15, 1931, and the resolution of authority to Edward M. Winston, dated April 27, 1932, shall be in force except as herein modified."

At the November election, 1932, another was elected to succeed the former State's Attorney and on July 22, 1933, he filed an information in equity in the circuit court of said county in which he made Ashton, Winston and the several members of the board of commissioners parties defendant. It was alleged that Ashton and Winston had received $20,000 pursuant to said contract, that another item of $7263.92 had been audited, county warrants issued and would be delivered unless enjoined by decree of court. It was charged that the several resolutions adopted by the board were *ultra vires,* that the contract was illegal and void. The prayer was that Ashton and Winston be required to account for the $20,000 previously received, that payment of the $7263.92 be enjoined and that plaintiffs be granted general relief.

The county commissioners, Ashton and Winston filed separate pleadings. An issue was raised on a motion to dismiss as to whether it was within the powers and duties of the State's Attorney to bring an action on behalf of the People against the county commissioners of the county

while he was the legal adviser of such board. The motion was sustained and the cause dismissed. On direct appeal (*People* v. *Ashton,* 358 Ill. 146,) the decree was reversed and the cause remanded with directions.

After the cause was redocketed and the mandate filed, Ashton and Winston each filed an answer. Winston also filed a counterclaim to recover the fees due on the contract. He claimed the amount due was in excess of one and one-half million dollars. The State's Attorney's motion to strike Winston's answer and counterclaim was sustained and Winston elected to stand by his pleading whereupon a final judgment was entered against him. He brings the cause here for review.

Cause No. 27163 is an action at law instituted by Ashton and joined in by Butz against the county of Cook to recover the fees alleged to be due on the same resolutions and acceptances set forth in No. 27169. Winston was made a defendant. This suit was filed June 26, 1939. Butz filed a separate complaint in which it was alleged that during the regime of both Ashton and Winston he carried the burden of drawing the pleadings in all cases filed to enforce the collection of delinquent taxes; that he filed petitions to intervene in certain cases pending in the Federal courts and prosecuted claims in probate court against estates of deceased persons, and that Ashton, Winston, the county of Cook and the then State's Attorney had knowledge that he was performing such services. He claimed that $1,714,682.92 was due him for fees. A second count was on *quantum meruit.* Winston filed an answer and counterclaim adopting Ashton's and Butz's pleadings.

The State's Attorney's motion to strike Ashton's and Butz's complaint and Winston's answer and counterclaim was sustained and a final judgment entered. Ashton and Butz perfected a joint appeal and Winston brings his cause

here by a separate appeal. They will be referred to as appellants, and the People as represented by the State's Attorney as appellee.

Appellee's motion to dismiss contained nine assignments but the ones urged here as grounds for affirmance pertain solely to the power of the board of commissioners to make the contracts in question. Appellants have pleaded estoppel against the county. It is not claimed that appellants were employed to render service in actions then pending, therefore the provisions of section 6 of the State's Attorneys Act (Ill. Rev. Stat. 1941, chap. 14, par. 6,) have no application.

The law authorizes court action to enforce the collection of delinquent real estate taxes. That appellants filed such suits in the name of the People and as a result of their efforts there was collected and paid into the county treasury more than $16,000,000 is admitted by the motions to strike. The principal question is as to the power of the board to employ private counsel to conduct such litigation, but appellee's contention that the board was without such power, and that the law confers such power on and makes it the duty of the State's Attorney to render such legal service, necessitates an examination of the law as to the powers of the board and the State's Attorney in such matters.

Section 7 of article X of the constitution provides that the "county affairs of Cook county shall be managed by a board of commissioners of fifteen persons * * * in such manner as may be provided by law." The fullest meaning that can be given to such language is that it creates the board of commissioners and vests in it the power to manage the county's affairs. The scope and breadth of the phrase "county affairs" is not defined, nor is there amplification as to what authority the board may exercise and be within the scope and meaning of the word "manage." It is therefore necessary to look to the legis-

lative enactments for 'the power that has been delegated to the board in the management of county affairs and determine whether the power here exercised was conferred by statute. *Dahnke* v. *People,* 168 Ill. 102.

By section 22 of the Counties Act (Ill. Rev. Stat. 1941, chap. 34, par. 22,) a county may sue or be sued, and by section 23 it is directed that "the powers of the county as a body corporate or politic, shall be exercised by a county board, to-wit: * * * in the County of Cook, by a board of county commissioners, pursuant to section 7 of article X of the constitution." Other provisions pertaining to the powers of the board are found in subparagraph 3 of section 24, which directs that the board has power "to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." Subparagraph 2, section 25, gives the board authority to manage the county funds and county business, and by subparagraph 5 of the same section it is given authority to levy and collect taxes for county purposes. By section 33 of the Counties Act it is made the duty of county boards "to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend to enforce the collection of all taxes charged on the state assessment."

Section 22 of article VI of the constitution creates the office of State's Attorney and provides for his election. Section 32 of the same article refers to the residence, the performance of the duties of the State's Attorney and other officers and the manner in which vacancies in any of such offices may be filled. It is provided that "all officers, [which includes State's Attorneys] where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be

provided by law." It will be observed that these constitutional provisions do not prescribe the specific duties of the State's Attorney. It has been held that the State's Attorney is an officer provided for by the constitution and that he is a county officer. (*Cook County* v. *Healy*, 222 Ill. 310.) Section 5 of the State's Attorneys Act (Ill. Rev. Stat. 1941, chap. 14, par. 5,) directs it shall be the duty of the State's Attorney "to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in his county, in which the people of the state or county may be concerned," and second, "to prosecute all forfeited bonds and recognizances, and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the state or his county, or to any school district or road district in his county, * * * which may be prosecuted in the name of the People of the State of Illinois."

By the latter provision the duty to prosecute all actions and proceedings for the recovery of revenues and penalties is expressly imposed on the State's Attorney of the county where the default occurred. By section 33 of the Counties Act, the duty is imposed upon the county board to take and order suitable and proper measures for the prosecution of all suits which it may be necessary to start to enforce the collection of taxes charged on the State assessment. The general subject matter of these two statutes, so far as pertinent here, is the collection of delinquent taxes. The former contains the express direction imposing the duty upon the State's Attorney to prosecute such actions. This is in keeping with the purpose for which the office of State's Attorney was created. He is the attorney and legal adviser of the county officials in all matters pertaining to the official business of the county, but his powers and duty pertain solely to those matters in which a knowledge of the law is required.

Section 33 of the Counties Act contains no express authorization empowering it to employ private attorneys to institute such proceedings. If any such power is conferred it could arise only by implication.

The rule is that where there is to be found in a statute a particular enactment, it is to be held operative as against the provisions on the subject either in the same act or in the general laws relating thereto. *Robbins* v. *Lincoln Park Commissioners,* 332 Ill. 571; *Handtoffski* v. *Chicago Consolidated Traction Co.* 274 Ill. 282; *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.

But we do not regard these statutes as being in such conflict that a rule of construction must be adopted which accepts one and rejects the other. All statutes relating to the same subject must be compared and so construed with reference to each other that effect may be given to all the provisions of each, if it can be done by any fair and reasonable construction. It is presumed that the several statutes relating to one subject are governed by one spirit and policy and that the legislature intended the several statutes to be operative and harmonious. (*Ketcham* v. *Board of Education,* 324 Ill. 314.) The direction in section 33, that the county board shall take and order suitable and proper means for the prosecution of suits brought to enforce the collection of taxes, evidently means that the board, as the governing agency of the county in charge of expending the county's funds, has the duty of meeting the expenses necessarily incurred in such litigation. Such duty is similar to the general duties of the board and the purposes for which the board was created by the constitution. It is in accord with its functions generally as outlined by statute. The performance of such a duty is in a field foreign to the field in which the State's Attorney performs his duty. The duty resting upon the State's Attorney to prosecute suits for the col-

lection of delinquent taxes requires performance in a field outside the scope of the duties of a county board. It seems that the legislature intended to preserve a relationship between the duties of the board and those of the State's Attorney which is not dissimilar from that of attorney and client.

It is alleged in appellants' pleadings that the occasion for employing private counsel was created by the increase of the number of defaults in the payment of taxes and that the State's Attorney did not have the time, in connection with his other duties, to institute such suits. County boards can exercise only such powers as are expressly given by law or such as arise by necessary implication from the powers granted or are indispensable to carry into effect the object and purpose of their creation. (*Marsh* v. *People*, 226 Ill. 464; *County of Cook* v. *Gilbert*, 146 Ill. 268.) No provision is made in the law which authorizes a board to employ private counsel in collection of delinquent taxes under the emergency pleaded, even though the State's Attorney approves the contracts as to form and gives his silent acquiescence to the procedure adopted. His consent cannot operate to supply the board with a power which the legislature has seen fit to withhold.

Appellants rely upon cases such as *Mix* v. *People*, 116 Ill. 265, and *Ottawa Gas Light and Coke Co.* v. *People*, 138 Ill. 336, as holding that a county board has authority to employ private counsel to enforce the collection of delinquent taxes. There are statements in the opinions in those cases which appear to support appellants' contentions, but the ruling in such cases must be considered in the light of the facts. In each of them the authority of private counsel to represent the plaintiffs was questioned by a taxpayer against whom the suit to collect had been instituted, while in these cases it is a direct attack upon the power which the board undertook to exercise. This dis-

tinction was noted in *People* v. *Straus*, 355 Ill. 640. That was an action to foreclose a tax lien started by one of the appellants in these cases as attorney for the People serving under the contracts in question. His authority to appear in such capacity was questioned. In noting that it was a collateral attack on his authority raised by a taxpayer it was said: "Numerous cases are cited tending to show that it was the proper function of the State's Attorney to prosecute this case, and there is much argument for the purpose of showing that the contract between the county commissioners and the solicitor who appeared for the People in the trial court is unconscionable, contrary to public policy and void. The principal case relied on in this connection is *Fergus* v. *Russel*, 270 Ill. 304. That case is not in point on this inquiry, because the employment was there directly attacked and not brought collaterally in issue as is attempted here." The statements in those cases which are counter to the conclusions reached are not adhered to.

The law is well settled that when the constitution or the laws of the State create an office, prescribe the duties of its incumbent and fix his compensation, no other person or board, except by action of the legislature, has the authority to contract with private individuals to expend public funds for the purpose of performing the duties which were imposed upon such officer. (*Fergus* v. *Russel*, 270 Ill. 304; *Stevens* v. *Henry County*, 218 Ill. 468; *Hope* v. *City of Alton*, 214 Ill. 102.) The contracts of employment under which appellants claim were *ultra vires* and void.

Appellants contend that even though the contracts are *ultra vires* and void, the county having received the benefits of their services by the collection of more than $16,000,000 of delinquent taxes, it is now estopped to deny its liability to pay for such services. They cite and rely upon cases

such as *Hall* v. *County of Cook,* 359 Ill. 528. Such contention ignores the distinction made in many cases between contracts of a municipality which are *ultra vires* for want of power to make and which are wholly void, and those cases where the municipality had the power to act but by reason of an improper exercise of the power the contract is void. The *Hall case* and other cases are of the latter class.

In *Hope* v. *City of Alton,* 214 Ill. 102, an ordinance of the city created a legal department and prescribed its duties. While such ordinance was in full force, the city council adopted a resolution employing a private attorney to appear in litigation in which the city was a party. In an action by such attorney to recover for compensation for such services, this court held that the act of employment was void and that the city was not estopped from defending on the grounds that it had no power to make the contract. This case is controlling here. The principle has been often stated as follows: Everyone is presumed to know the extent of a municipal corporation's control over its public funds and such corporation can not be estopped to aver its incapacity when an effort is made to enforce against it a contract which provides for payment from such funds when it had no power to make such an agreement. *People* v. *Parker,* 231 Ill. 478; *May* v. *City of Chicago,* 222 Ill. 595; *City of Danville* v. *Danville Water Co.* 178 Ill. 299.

Appellants also contend that they should be permitted to recover on a *quantum meruit.* Such a recovery is founded on the implied promise of the recipient of services or material to pay for something which he has received that is of value to him. Such principle can have no application in this case for the reason that the contracts were wholly void and created no rights and imposed no obligations. They come within the principle of law that

where the legislature has withheld a power it is the same as though the exercise of the power was prohibited by law. (*Continental Ill. Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank*, 366 Ill. 366.) To permit recovery of compensation in these cases on a *quantum meruit* would, in legal effect, give sanction to the giving of public funds to private use for the performance of duties which the law imposed upon the State's Attorney and for which he receives the salary fixed by law.

Appellee contends that there was no appropriation ordinance in existence when the contract was made covering the liability incurred and that, therefore, the contract was void. Appellants' pleadings contained allegations of facts relative to items of the appropriation ordinance for the year in which the contract was made, and it is argued that the motion to dismiss admitted these facts which it is claimed are sufficient to show the liability incurred was covered by proper appropriation. The contracts having been declared void under the views expressed, therefore it is not necessary to consider the question of the sufficiency of the facts pleaded to show a proper appropriation.

The decree in No. 27169 sustaining the motion to strike appellants' answer and counterclaim was correct and will be affirmed, but as the appellee asked for certain other relief against the defendants and for the purpose of preserving the rights and questions under that branch of the case, the cause is remanded to the circuit court with directions to proceed as to such matters. The judgment sustaining appellee's motion to strike appellants' pleading in No. 27163 was correct and is affirmed.

*No. 27163, Judgment affirmed.*
*No. 27169, Decree affirmed, and*
*cause remanded, with directions.*