BERNARD McKAY *et al.*, Taxpayers, for Themselves and All Others Similarly Situated, in the Name of and for the Benefit of the County of Cook, Plaintiffs-Appellants, v. STANLEY T. KUSPER, JR., Clerk of Cook County, *et al.*, Defendants-Appellees (The County of Cook, by the Board of Commissioners of Cook County, Nominal Defendant-Appellee).

First District (1st Division) Nos. 1—91—0797, 1—91—3062 cons.

Opinion filed March 29, 1993.

Fumagalli & Tecson, Ltd. (Daniel J. Fumagalli, of counsel), Krislov & Associates, Ltd. (Clinton A. Krislov and Jonathan Nachsin, of counsel), and William A. Barnett, all of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Daniel E. Cannon, and Mary T. Nicolau, Assistant State's Attorneys, of counsel), for appellees David Orr and the County of Cook.

Winston & Strawn, of Chicago (Paul P. Biebel, Jr., Special State's Attorney, and David E. Koropp, of counsel), for appellee Stanley T. Kusper, Jr.

Mayer, Brown & Platt, of Chicago (Tyrone C. Fahner, Herbert L. Zarov, and Anne K. Lewis, of counsel), for appellee Amalgamated Trust and Savings Bank.

JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated appeal. Plaintiffs, taxpayers, appeal from the February 5, 1991, order of the trial court dismissing counts III, IV and V of their second amended complaint against defendant Amalgamated Trust and Savings Bank (Bank), and from the March 19, 1991, order of the trial court dismissing counts I and II against defendants Stanley Kusper (Kusper), former clerk of Cook County (County Clerk), and David Orr (Orr), present clerk of Cook County, for alleged violations of the deposit of public funds act (Deposit Act) (Ill. Rev. Stat. 1989, ch. 102, par. 34) and the Public Funds Investment Act (Investment Act) (Ill. Rev. Stat. 1989, ch. 85, par. 901). Plaintiffs further appeal from the August 14, 1991, order of the trial court denying both plaintiffs' motion to vacate the dismissal of Orr and petition for the award of attorney fees. For the following reasons, we affirm.

The record reveals the following relevant facts. Beginning in at least November 1982 and continuing through 1988, Kusper, as county clerk, received public funds in the form of proceeds from the "scaven-

ger" sales of tax-delinquent parcels of real property located in Cook County (County). Kusper retained the proceeds from the scavenger sales for subsequent disbursement to the county treasurer, depositing the proceeds in non-interest-bearing accounts at the Bank.

Following public disclosure of Kusper's investment practices in February 1990, the Bank made what it described as a "voluntary" payment of $265,779.60 to the County as interest on $6.8 million held in a County Clerk account at the Bank for a period of eight months. At this time, Kusper publicly announced that the County Clerk and the Bank were under no legal obligation to deposit and accrue interest on the public funds received from the scavenger tax sales. A County auditor's report estimated that at least $900,000 in interest would have accrued on funds deposited by Kusper through 1988.

On March 15, 1990, plaintiffs filed a "taxpayer derivative action" on behalf of themselves, all other taxpayers similarly situated, and for the benefit of the County, against Kusper and the Bank for violations of the Deposit and Investment Acts. In their complaint, plaintiffs alleged that defendants Kusper and the Bank fraudulently deprived the County of interest on County funds by failing to deposit the proceeds obtained from the scavenger sales of real property into interest-bearing accounts. On June 15, 1990, plaintiffs sent a letter to the county board and the Cook County State's Attorney (State's Attorney) demanding that legal action be taken on behalf of the County to recover the interest from the public funds at issue. At that time, plaintiffs stated their belief that it would be futile to make the demand upon Kusper because of his position that he was not subject to the requirements of the Deposit and Investment Acts. In a letter dated July 5, 1990, the State's Attorney, on behalf of the County, rejected plaintiffs' demand.

Plaintiffs filed their amended complaint on July 9, 1990. On December 6, 1990, the trial court granted the Bank's and the County's separate motions to dismiss plaintiffs' amended complaint without prejudice, pursuant to section 2—615(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(a)). At that time, the trial court also denied Kusper's motion to dismiss plaintiffs' amended complaint. In addition, the trial court instructed plaintiffs to include Orr as a defendant, as he had recently succeeded Kusper in the office of County Clerk. Plaintiffs filed their second amended complaint on December 20, 1990, including Orr as a defendant and naming the County as a nominal defendant.

Count I of plaintiffs' second amended complaint, directed against both Kusper and Orr collectively as the "County Clerk," alleged that

as custodian of public funds, the County Clerk's practice of investing the proceeds of the scavenger sales in non-interest-bearing accounts directly violated the deposit and investment requirements established in the Deposit and Investment Acts.

The Deposit Act provides in pertinent part:

> "§1. Any treasurer or other custodian of public funds may deposit such funds in a savings and loan association or State or national bank in the State. When such deposits become collected funds and are not needed for immediate disbursement, they shall be invested within 2 working days at prevailing rates or better." (Ill. Rev. Stat. 1989, ch. 102, par. 34.)

Section 2 of the Investment Act describes "Permitted Investments" as follows:

> "To the extent a public agency has custody of funds not owned by it or another public agency and does not otherwise have authority to invest such funds, the public agency may invest such funds as if they were its own. Such funds must be released to the appropriate person at the earliest reasonable time, but in no case exceeding 31 days, after the private person becomes entitled to the receipt of them. All earnings accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made, except as provided otherwise *** and except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund." (Ill. Rev. Stat. 1989, ch. 85, par. 902.)

Plaintiffs alleged that the County Clerk's failure to comply with the Deposit and Investment Acts deprived the County and its taxpayers of the interest earnings required to accrue under the Acts, and sought an accounting and payment of the amount of interest the County would have received had the funds been invested in accordance with the statutes.

Count II of plaintiffs' second amended complaint alleged that the County Clerk breached his fiduciary duty to the County and the taxpayers by failing to invest the public funds in accordance with the statutes. No count of plaintiffs' second amended complaint is directed against the County, and the prayer for relief does not seek any relief from the County.

Counts III, IV and V of plaintiffs' second amended complaint contained allegations against the Bank. In count III, plaintiffs alleged that the Bank had constructive notice that the County Clerk's practice of investing the public funds in non-interest-bearing accounts vio-

lated the County Clerk's fiduciary duty to the county taxpayers under section 6 of the Investment Act, which provides:

"§6. (a) No bank shall receive any public funds unless it has furnished the corporate authorities of a public agency submitting a deposit with copies of the last two sworn statements of resources and liabilities which the bank is required to furnish to the Commissioner of Banks and Trust Companies or to the Comptroller of the Currency. Each bank designated as a depository for public funds shall, while acting as such depository, furnish the corporate authorities of a public agency with a copy of all statements of resources and liabilities which it is required to furnish to the Commissioner of Banks and Trust Companies or to the Comptroller of the Currency ***." (Ill. Rev. Stat., 1989, ch. 85, par. 906.)

Plaintiffs alleged that under the above statute, the Bank's receipt and continuing possession of the public funds in non-interest-bearing accounts constituted a violation of the Deposit and Investment Acts.

Count IV alleged that the Bank participated in the County Clerk's breach of fiduciary duty to the County and plaintiff taxpayers by failing to supervise properly and to insure the proper deposit of the public funds in interest-bearing accounts. Count V alleged that the Bank was unjustly enriched by receiving earnings interest on the public funds.

Kusper filed an answer to plaintiffs' second amended complaint on January 11, 1991. The County and the Bank each filed separate motions to dismiss plaintiffs' second amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) for failure to state a cause of action. The County argued that plaintiffs lacked standing to assert the rights of Cook County. Orr filed a separate motion to dismiss plaintiffs' complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)), arguing that the claim against him was barred as moot, and attaching his affidavit stating that he did not continue the investment practices of Kusper and that he currently deposited all funds received by the County Clerk's office into interest-bearing accounts.

Following a hearing on February 5, 1991, the trial court dismissed counts III, IV and V of plaintiffs' second amended complaint against the Bank. In addition, the court entered an order directing the parties

to make further argument on Kusper's motion to dismiss plaintiffs' amended complaint.[1]

On that same day, the County Board of Commissioners (County Board) passed the Cook County Taxpayers' Interest Assurance Ordinance (Interest Ordinance), which directs "all elected and appointed public officials of Cook County" to "invest public funds in their possession or for which they are custodians in interest-bearing accounts."

On March 19, 1991, the trial court dismissed the remaining counts I and II against Kusper and Orr, and further found that plaintiffs failed to allege standing to assert a claim on behalf of the County. The trial court found the complaint moot as to Orr in light of both his affidavit and the County Board Interest Ordinance. On August 14, 1991, the trial court denied plaintiffs' motions to vacate the dismissal of Orr and award plaintiffs attorney fees. Plaintiffs filed a timely notice of appeal of the trial court's order dismissing counts III, IV and V against the Bank on March 5, 1991. Plaintiffs' timely notice of appeal of the trial court's order of August 14, 1991, followed on August 19, 1991. The two appeals were consolidated by this court for purposes of review.

Preliminarily, on appeal of an order dismissing a plaintiff's complaint, all well-pled facts and reasonable inferences that can be drawn from the complaint are examined to determine whether a cause of action is sufficiently stated upon which relief may be granted. *Arlt v. Great American Federal Savings & Loan Association* (1991), 213 Ill. App. 3d 584, 572 N.E.2d 1115; *Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 583 N.E.2d 561.

■ We first address plaintiffs' contention that the the trial court erred in determining that plaintiffs lacked standing to assert a claim on behalf of the County. The County asserts that the Counties Code (Ill. Rev. Stat. 1989, ch. 34, par. 1—6003) places the sole authority in the County Board to bring suits on behalf of the County. We agree that the plaintiffs lack standing to bring this action against Kusper and Orr on behalf of the County, as plaintiffs' action is not authorized by statute.

Section 1—6003 of the Counties Code provides:

---

[1]Although Kusper filed an answer to plaintiffs' second amended complaint, the trial court permitted Kusper to file a supplemental motion to dismiss plaintiffs' second amended complaint. The basis for this supplemental motion was Kusper's original motion to dismiss plaintiffs' *amended* complaint which was previously denied by the trial court. The trial court subsequently disposed of the matter on Kusper's supplemental motion to dismiss.

"It shall be the duty of the county boards of each of the counties of this State to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend to enforce the collection of all taxes charged on the state assessment." (Ill. Rev. Stat. 1989, ch. 34, par. 1—6003.)

In *Ashton v. Cook County* (1943), 384 Ill. 287, 51 N.E.2d 161, the Illinois Supreme Court construed section 1—6003 of the Counties Code (formerly the "Counties Act" (Ill. Rev. Stat. 1941, ch. 34, par. 33)) along with section 3—9005 of the Counties Code (formerly the "State's Attorney's Act" (Ill. Rev. Stat. 1941, ch. 14, par. 5)), to impose upon the State's Attorney the duty to prosecute actions for recovery of moneys or penalties due to the county, and for the county board to meet the expense of such litigation. (*Ashton*, 384 Ill. at 297.) In addition, the court found that the statute contained no express authority empowering the Cook County Board to employ private counsel for the collection of delinquent taxes. (*Ashton*, 384 Ill. at 298.) Thus, the Counties Code does not provide for taxpayer lawsuits on behalf of Cook County brought by private individuals.

The record in the present case reveals that the State's Attorney, acting on behalf of the County, refused plaintiffs' request to prosecute Kusper for violations of the Deposit and Investment Acts. Relying on a general proposition espoused in *Feen v. Ray* (1985), 109 Ill. 2d 339, 344, 487 N.E.2d 619, plaintiffs therefore assert that as taxpayers, they have an "equitable right to bring suit to protect their interest in public funds." Plaintiffs further cite *City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, 357 N.E.2d 452, for the proposition that their action is "grounded on equitable principles."

Neither of the above cases provides support for plaintiffs' assertion. Both cases involved taxpayer lawsuits brought on behalf of municipalities and for the benefit of those municipalities, and not on behalf of nor for the benefit of Cook County. Municipal "Taxpayer Suits" are explicitly authorized by section 1—5—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 1—5—1), which provides as follows:

"A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality, or for any money which may have been paid, expended, or released without authority of law." Ill. Rev. Stat. 1989, ch. 24, par. 1—5—1.

Plaintiffs' further reliance on *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 426 N.E.2d 860, and *Weitzman v. Cook County* (1985), 133 Ill. App. 3d 1013, 479 N.E.2d 957, is unavailing. In *O'Keeffe,* the plaintiff had the authority to institute a taxpayer derivative suit on behalf of the Metropolitan Sanitary District of Greater Chicago pursuant to sections 11.18 and 11.22 of the Purchasing Act for the Metropolitan Sanitary District of Greater Chicago (the Purchasing Act) (Ill. Rev. Stat. 1971, ch. 42, pars. 331.18, 331.22). Section 11.22 provides as follows:

> "Any purchase order or contract executed in violation of this Act shall be null and void. Public funds which have been expended thereon, may be recovered in the name of the sanitary district in any court of competent jurisdiction." (Ill. Rev. Stat. 1971, ch. 42, par. 331.22.)

In *Weitzman,* the taxpayer-plaintiff sought injunctive relief on behalf of the taxing districts of Cook County, to restrain the Cook County Board from allegedly violating its fiduciary duty to plaintiffs by awarding certain properties purchased at a scavenger sale to neighborhood housing development organizations rather than selling said properties to the highest cash bidders. On appeal, this court relied upon a municipal case analysis in determining that the plaintiff lacked standing to assert the rights of the taxing districts. (*Weitzman,* 133 Ill. App. 3d at 1016, 479 N.E.2d at 960, citing *O'Keeffe,* 85 Ill. 2d at 468-69, 426 N.E.2d at 864 (prior demand to sue or a showing that such a demand would have been futile is a precondition to bringing a taxpayer action); and *Tupy v. Oremus* (1982), 105 Ill. App. 3d 932, 937, 435 N.E.2d 197 (the condition precedent to the maintenance of a taxpayer suit is to make a demand on the proper public official to bring suit in the name of and on behalf of the municipality).) A municipal case analysis is inappropriate in the present case, as plaintiffs have not brought suit on behalf of a municipality.

Plaintiffs' final contention that section 1—6003 of the Counties Code does not preclude taxpayers suits is without merit. Plaintiffs' argument is based on a number of cases wherein taxpayers successfully maintained actions on their own behalf as taxpayers, individually, and for other taxpayers in the same county, for an official's illegal retention of funds or expenditure of funds. (See *Jones v. O'Connell* (1914), 266 Ill. 443, 107 N.E. 731 (taxpayers had equitable right to maintain lawsuit against Cook County treasurer for his unlawful retention of inheritance taxes he collected); *McCord v. Pike* (1887), 121 Ill. 288, 12 N.E. 259 (allowing taxpayers' derivative action to enjoin execution and delivery of a deed to property sold by the county board for less

than its value); *Hays v. Martin* (1926), 240 Ill. App. 340 (allowing taxpayers' suit seeking an accounting and recovery from the County Clerk for monies he had illegally collected and retained).) The facts of the present case are not comparable to the cases cited by plaintiffs. As such, plaintiffs have failed to properly allege standing to assert an action on behalf of Cook County, and the trial court's order dismissing plaintiffs' action on behalf of the County was proper.

■ Next, we examine plaintiffs' contention that the trial court erred in dismissing counts I and II of their second amended complaint against Kusper. Plaintiffs argue that Kusper had a duty to deposit and invest the scavenger sale proceeds under the Deposit and Investment Acts and that by his failure to do so, he is guilty of willful and wanton misconduct. In response, Kusper asserts that the trial court properly dismissed plaintiffs' claims because he is immune from liability under sections 2—201 and 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 2—202), which together immunize public employees from liability for discretionary acts in the execution or omission of enforcement of any law unless such acts constitute willful and wanton negligence. See also *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 899.

The trial court dismissed Kusper as a defendant based on the following facts: (1) Kusper no longer holds office as the County Clerk and plaintiffs sued Kusper only in his corporate capacity; (2) plaintiffs failed to allege that Kusper's conduct was willful and wanton and therefore Kusper was immune from liability as a public official; and (3) a proper action against the County Clerk for alleged misconduct is within the sole authority of the County Board. We previously determined that plaintiffs do not have standing to bring this action on behalf of the County. We further find either of the trial court's two remaining bases for dismissal sufficient.

First, because the function of courts is to decide controverted issues in adversary proceedings, moot cases which do not present live issues are not ordinarily entertained. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769.) Here, plaintiffs' case against Kusper does not present a live issue for this court because plaintiffs sued Kusper only in his corporate capacity, and he is no longer the County Clerk. Therefore the trial court correctly dismissed Kusper from plaintiffs' lawsuit.

Second, the common law doctrine of public official immunity provides immunity to Kusper from prosecution. This doctrine rests on the principle that a government official should be protected from per-

sonal liability for making discretionary judgments based on his perception of public needs. (*Falk v. Martel* (1991), 210 Ill. App. 3d 557, 569 N.E.2d 248; *MidAmerica Trust Co. v. Moffatt* (1987), 158 Ill. App. 3d 372, 511 N.E.2d 964.) "Public official immunity is granted because a good-faith mistake in judgment ought not to subject a public decisionmaker to a lawsuit." *Moffatt*, 158 Ill. App. 3d at 376.

When application of the doctrine of public official immunity is urged, the critical question is whether the employee's conduct was "discretionary" or merely "ministerial," with the employee or State official incurring liability only where his actions were not "discretionary." (*Moffatt*, 158 Ill. App. 3d at 376, citing *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 1001, 372 N.E.2d 1131, 1134.) Cases holding public officials to have acted within their official discretion have generally involved actions and duties unique to a particular public office. *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134.

Relying on *Town of the City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 204, 421 N.E.2d 912, and *Village of Pawnee v. Johnson* (1984), 103 Ill. 2d 411, 417, 469 N.E.2d 1365, the trial court in the present case specifically ruled that investment of public funds by any treasurer or other custodian of public funds in interest-bearing accounts is required by the Deposit and Investment Acts, and that these acts are the controlling statutes in this matter. Thus, Kusper's conduct regarding the investment of public funds flowed from his status as County Clerk and was "discretionary" rather than "ministerial."

However, immunity does not extend to a public employee's acts based on corrupt or malicious motives or willful and wanton acts. (*Munizza*, 222 Ill. App. 3d at 56, 583 N.E.2d at 566.) To plead a cause of action for willful and wanton misconduct, a complaint must allege facts demonstrating that a defendant committed acts with actual or deliberate intention to harm or with an utter indifference or conscious disregard for the safety of others. (*Munizza*, 222 Ill. App. 3d at 56.) In the present case, the record shows that plaintiffs failed to allege in their second amended complaint that Kusper was guilty of willful and wanton conduct.

We further find that Kusper is immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*). Section 2—201 of the Act provides in relevant part:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in

the exercise of such discretion even though abused." Ill. Rev. Stat. 1989, ch. 85, par. 2—201.

Section 2—202 provides:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." (Ill. Rev. Stat. 1989, ch. 85, par. 2—202.)

While the trial court did not cite the Act in its ruling dismissing Kusper from plaintiffs' action, Kusper had in fact raised the Act three times in separate pleadings before the trial court.[2] The Tort Immunity Act was therefore properly before the trial court as a defense and provides Kusper immunity from liability.

■ Plaintiffs further contend that the trial court erred in dismissing counts I and II of their second amended complaint against Orr as moot. Plaintiffs initially argue that neither Orr's affidavit nor the Interest Ordinance provides a sufficient basis to render the case moot.

Dismissal of an action under section 2—619(a)(9) is proper where the motion, supported by affidavit, includes defenses that defeat a cause of action completely. (*Koester v. Weber, Cohn & Riley, Inc.* (1989), 193 Ill. App. 3d 1045, 550 N.E.2d 1004.) Moreover, when facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true. *Galich v. Catholic Bishop of Chicago* (1979), 75 Ill. App. 3d 538, 394 N.E.2d 572.

To defeat a claim of mootness, the moving party must show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.* (1953), 345 U.S. 629, 633, 97 L. Ed. 1303, 1309, 73 S. Ct. 894, 898.

In the present case, the record does not demonstrate any cognizable danger of "recurrent violation" on the part of Orr to defeat a claim of mootness. In his affidavit, Orr states that in his position as County Clerk, he has never violated the Deposit Act and that he currently deposits all proceeds from scavenger sales into interest-bearing accounts. Under the circumstances, it is unlikely that a violation could "recur." It is not incumbent upon this court to anticipate that Orr will violate the law.

---

[2]Kusper first raised the Tort Immunity Act in his motion to dismiss plaintiffs' amended complaint; next, as an affirmative defense in his answer to plaintiffs' second amended complaint; and finally in his supplemental motion to dismiss plaintiffs' second amended complaint.

Plaintiffs' further argument that the facts of the present case present an exception to the mootness doctrine is unavailing. Illinois courts have occasionally found exceptions to the mootness doctrine where a case presents an issue of substantial public interest. (See *In re E.G.* (1989), 133 Ill. 2d 98, 105, 549 N.E.2d 322; *Labrenz*, 411 Ill. at 622 (review granted in both cases regarding Jehovah's Witness members who refused to consent to blood transfusions, even though parties had already received transfusions, because failure to act quickly in similar cases in the future would lead to irreversible harm).) In determining whether a case exhibits the requisite degree of public interest, courts look to "the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." (*Labrenz*, 411 Ill. at 622.) In *Labrenz*, the court reasoned that an exception was warranted because "the present case falls within that highly sensitive area in which governmental action comes into contact with religious beliefs of individual citizens." *Labrenz*, 411 Ill. at 623.

The facts of the present case do not present a "substantial public interest exception" to the doctrine of mootness, as plaintiffs contend. As noted above, the record demonstrates that a future recurrence of violation of the laws at issue is unlikely. Moreover, the trial court expressly held that an "authoritative determination" was not necessary, because the Deposit and Investment Acts provide guidance to public officers regarding deposit and investment of public funds.

The record shows that plaintiffs failed to file any counteraffidavit in the present case. We therefore find that Orr's affidavit operates as a defense which defeats the action against him as moot.

■ Next, we address plaintiffs' contention that the trial court improperly dismissed counts III, IV and V against Bank. Plaintiffs argue that the Bank, as a third party, (1) had knowledge and involvement in Kusper's alleged breach of fiduciary duty; (2) had the responsibility to insure that the funds were deposited in interest-bearing accounts; and (3) was unjustly enriched because interest was not paid on Cook County accounts. We disagree.

The Deposit Act imposes a duty to invest public funds solely on the "custodian" of such funds. In the present case, the custodian of the scavenger sale proceeds is the County Clerk, not the Bank. Under Illinois law, banks have neither the right not the duty to unilaterally choose a new form of investment for their depositors. (*Bieze v. Coca* (1977), 54 Ill. App. 3d 7, 16-17, 369 N.E.2d 106, 113.) The Deposit Act does not direct banks to insure compliance by public officials.

Therefore, the Bank cannot be liable for Kusper's alleged failure to properly invest public funds.

Furthermore, the Bank does not have a fiduciary relationship with Kusper. This court has stated that the relationship between banks and the county collector is not one of agency but rather that of debtor-creditor. (*Board of Education of Valley View Community Unit School District No. 365U v. Bosworth* (1986), 144 Ill. App. 3d 982, 985, 495 N.E.2d 601, 603.) The duties between a bank and a depositor are defined entirely by the terms of the account agreement between them, and there can be no recovery for the breach of a nonexistent duty. (*First Midwest Bank/Joliet v. Dempsey* (1987), 157 Ill. App. 3d 307, 313, 509 N.E.2d 791.) Plaintiffs do not allege that the Bank was a willing participant in a scheme to cause Kusper to breach his fiduciary duty, and that it was the Bank that induced the breach. See *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 455, 411 N.E.2d 1067, 1069.

Finally, a bank does not become unjustly enriched where proper payment is made to the depositor and a simple debtor-creditor relationship exists between the parties. (*Bieze*, 54 Ill. App. 3d at 16, 369 N.E.2d at 112.) Moreover, unjust enrichment is not descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1985), 137 Ill. App. 3d 84, 90-91, 484 N.E.2d 349.) Plaintiffs fail to allege in counts III, IV and V of their second amended complaint any unlawful conduct against the Bank as a basis for such relief. Accordingly, the trial court properly dismissed plaintiffs' allegations against the Bank.

■ Finally, plaintiffs contend that the trial court erred in denying their request for attorney fees. Plaintiffs argue that they were entitled to an award of fees for their success in this lawsuit. In support, plaintiffs rely on a number of taxpayer derivative cases which resulted in favorable settlements or judgments for the taxpayers. See, *e.g., Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 426 N.E.2d 860.

The facts of the present case are distinguishable from *O'Keeffe* and the other cases cited by plaintiffs. Neither a judgment nor a settlement has been entered in plaintiffs' favor in the present case, as the case was dismissed by the trial court. Plaintiffs' claims that this lawsuit saved money for the county and that the practice over which

they sued has ceased since the filing of their lawsuit are not grounds for the award of attorney fees in this matter.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.